USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: ___2/6/2026___

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ROBIN RIVERA,

                          Plaintiff,

          -against-

PRATT (QUALITY CARTON), LLC,

                          Defendant.

7:23 CV 8018 (NSR)

**OPINION & ORDER**

NELSON S. ROMÁN, United States District Judge:

Plaintiff Robin Rivera ("Plaintiff") brings this action against his former employer, Defendant Pratt (Quality Carton), LLC ("Defendant" or "Pratt"), alleging interference and retaliation in violation of the Family and Medical Leave Act ("FMLA"). (*See generally* Am. Compl., ECF No. 5.) Plaintiff alleges that Pratt interfered with his FMLA rights by contacting him repeatedly about work-related matters while he was on FMLA leave and retaliated against him by terminating his employment, at least in part, because he took FMLA leave. Pratt moved for summary judgment on both claims. For the reasons set forth below, Defendant's motion is GRANTED.

**FACTUAL BACKGROUND**[1]

Pratt is a subsidiary of Pratt Industries, Inc., a privately owned group of companies that manufactures and sells recycling and corrugated packaging products. (Def. 56.1 ¶¶ 1–2.) Pratt operates a manufacturing plant in New Windsor, New York (the "Plant"). (*Id.* ¶ 3.) Pratt maintains

---

[1] The Court does not address facts that are immaterial to Plaintiff's interference and retaliation claims. Unless otherwise noted, a standalone citation to a 56.1 Statement denotes that this Court has deemed the underlying factual allegation undisputed. Any citations to a Party's 56.1 Statement incorporates by reference the documents cited therein. Where relevant, however, the Court may cite directly to underlying documents. Except for references to deposition transcripts and affirmations, which will be cited as "Baratta Dep. Tr.", "Pl. Dep. Tr.", "Fowler Aff.", etc., Defendant's exhibits will be cited by their corresponding exhibit letter as filed on ECF and Plaintiff's exhibits will be cited by their corresponding exhibit number as filed on ECF.

1

an FMLA policy that provides eligible employees with up to twelve weeks of unpaid family or medical leave during a twelve-month period. (*Id.* ¶ 6.) Under the policy, an employee returning from FMLA leave is reinstated to the same position or an equivalent position with equivalent benefits, compensation, and terms and conditions of employment. (*Id.*¶ 8.) Non-exempt employees do not receive attendance points for absences while on FMLA leave. (*Id.* ¶ 10.) Pratt expects employees to report to work on time, limit breaks to the time allowed, and not leave work early without permission. (*Id.* ¶ 13.) Under Pratt's Employee Handbook, an employee is considered absent when scheduled to work and failing to report without prior approval. (*Id.* ¶¶ 14, 16.) Regular, on-time attendance is required for continued employment, and excessive tardiness or absences, whether excused or not, may result in discipline, up to and including termination. (*Id.* ¶ 15.) Plaintiff's employment with Pratt was at-will. (*Id.* ¶ 19.)

Plaintiff began working at Pratt in October 2014 as a Floor Supervisor and was promoted to Plant Manager in 2018 or 2019. (*Id.* ¶¶ 17–18; Pl. Opp. 56.1 ¶ 18.) Plaintiff's duties included leading all Plant departments to maintain safety, quality, and efficient production; developing and implementing plans for the efficient use of materials, machines, and employees; reviewing production costs and product quality; attending twice-daily production meetings; recommending budgets; and complying with company policies and procedures. (Def. 56.1 ¶¶ 21–22.) Plaintiff's shift as Plant Manager ran from 6:00 a.m. to 2:30 p.m., and he was expected to be physically present at the Plant five days per week during those hours. (*Id.* ¶¶ 23–24.) Because of the nature of the position, particularly the responsibility for supervising employees on the production floor, most of Plaintiff's duties could not be performed remotely. (*Id.* ¶ 25.)

Daniel Baratta, the Plant's General Manager, was Plaintiff's supervisor at all relevant times. (*Id.* ¶ 27.) Plaintiff received overall performance ratings of "Good/Fully Competent" in

2014 and 2015, "Excellent" in 2016 and 2017, "Good/Fully Competent" in 2019, and "Fully Meets Expectations" in 2020 and 2021. (Pl. 56.1 ¶¶ 147–53.)

On April 7, 2021, Pratt approved Plaintiff's request for intermittent FMLA leave to care for his wife (the "First FMLA Leave"). (Def. 56.1 ¶ 28.) Plaintiff took approximately five days of intermittent leave during the spring and summer of 2021. (*Id.* ¶ 31.) During this period, Mr. Baratta expressed support for Plaintiff, and the two communicated by text regarding Plaintiff's wife's condition. (*Id.* ¶¶ 36–37.) Pratt asserts that Plaintiff was not required to answer work-related e-mails, calls, and text messages while on his First FMLA Leave; Plaintiff disputes this and contends that Mr. Baratta was unaware that he was on leave on certain days. (*Id.* ¶ 39; Pl. Opp. 56.1 ¶ 39; Pl. 56.1 ¶ 177; Def. 56.1 Opp. ¶ 177.)

Plaintiff's wife died on August 7, 2021. (Def. 56.1 ¶ 33.) Pratt closed the Plant early so employees could attend the funeral and granted Plaintiff approximately three weeks of bereavement leave, which exceeded its standard three-day policy. (*Id.* ¶¶ 34–35.) When Plaintiff returned to work, Pratt reinstated him to his Plant Manager position with the same responsibilities, hours, and pay. (*Id.* ¶¶ 41–43.) Plaintiff's absences and tardiness during the spring and summer of 2021 were related to caring for his wife. (*Id.* ¶ 44.) Pratt maintains that it did not consider those absences in evaluating Plaintiff's performance or deciding to terminate him; Plaintiff disputes this. (*Id.* ¶ 45; Pl. Opp. 56.1 ¶ 45.)

At the time, Plaintiff lived in South Plainfield, New Jersey, and commuted approximately one and a half to two hours each way to the Plant. (Def. 56.1 ¶ 46.) After returning from bereavement leave in September 2021, Plaintiff frequently called out of work, arrived late, or left early, often with little or no advance notice. (*Id.* ¶¶ 47–49.) Although there were no formal call-out procedures for managers, they were expected to provide notice of foreseeable absences, late

3

arrivals, or early departures. (*Id.* ¶ 50.) Plaintiff's absences and tardiness frequently left the Plant without supervisory coverage at the start of shifts (*Id.* ¶ 53.) As a result of Plaintiff's attendance issues during the Fall of 2021, Mr. Baratta had several conversations with Plaintiff in which he communicated the importance that Plaintiff be physically present at the Plant for the Plant to operate successfully. (*Id.* ¶ 55.) The Parties dispute whether Plaintiff's absences and lateness negatively affected the Plant's production numbers. (*Id.* ¶¶ 54, 56; Pl. 56.1 Opp. ¶¶ 54, 56.)

On December 13, 2021, Pratt approved Plaintiff for FMLA leave to undergo knee surgery (the "Second FMLA Leave"). (Def. 56.1 ¶ 57.) Plaintiff was on continuous FMLA leave from December 13, 2021 to January 3, 2022. (*Id.* ¶ 58.) He was again reinstated to his Plant Manager position with the same responsibilities and hours. (*Id.* ¶¶ 60–61.) Plaintiff testified that, although Pratt, including Mr. Baratta, did not discourage him from taking this leave, Mr. Baratta gave him "attitude" and had previously told him, "I need you here. We all have families, we all have issues, but you need to figure it out because I need you here." (Def. 56.1 ¶ 62; Pl. 56.1 Opp. ¶ 62; Dep. Tr. 72:24–73:9; 80:3–20; 82:19–21.) Plaintiff avers that there are questions as to whether this treatment rises to the level of "discouragement" from taking subsequent FMLA leave. (Pl. 56.1 Opp. ¶ 62.)

After returning from the Second FMLA Leave, Plaintiff often failed to notify Pratt of absences or tardiness until after his shift had begun. (Def. 56.1 ¶¶ 68–69.) He admitted that he arrived an hour late "once or twice a week" in 2022 and sometimes two or three hours late, and that these issues were often due to personal reasons, including adjusting to being a single parent. (*Id.* ¶¶ 70–72.) As a result, Plant employees were sometimes left without a supervisor until other employees were directed to cover Plaintiff's duties. (*Id.* ¶ 74.) Plaintiff acknowledged that Jason Prego, who was responsible for scheduling, sometimes covered his duties despite this not being

4

part of Mr. Prego's normal role. (*Id.* ¶ 75.) Plaintiff further admitted that his attendance issues prevented him from fully performing his duties and that the Plant performed poorly in 2021 and 2022. (*Id.* ¶¶ 76–77.) The parties dispute whether Plaintiff's post-Second FMLA Leave attendance issues affected the Plant's performance and whether Pratt considered FMLA-related absences in evaluating his performance or terminating him. (*Id.* ¶¶ 63, 84; Pl. 56.1 Opp. ¶¶ 63, 84.)

In late January 2022, Mark Dinges, the General Manager of Pratt's Kansas City plant, visited the Plant as part of a routine peer review process. (Def. 56.1 ¶¶ 78–79.) Mr. Dinges identified several issues, including that Plaintiff's personal life complications were affecting his work performance despite having "all the assets to be effective." (*Id.* ¶ 80.) Throughout 2022, Mr. Baratta continued to emphasize the need for Plaintiff's physical presence at the Plant, and David McKinney, Pratt's Division President, warned Plaintiff that the Plant's performance needed to improve. (*Id.* ¶¶ 81–82.) In February 2022, Pratt hired former Kansas City Plant Manager Steve Longmore as a consultant to mentor Plaintiff and improve performance, but Plaintiff's attendance and performance did not improve. (*Id.* ¶¶ 86–87.) For example, that same month, Plaintiff failed to appear for a scheduled interview with a machine operator candidate who would have reported to him, requiring Divisional Human Resources Manager Amanda Fowler to step in to conduct the interview. (*Id.* ¶¶ 88–90.) Also in February 2022, Mr. McKinney offered to pay for Plaintiff to relocate closer to the Plant because it "needed [him] more at the facility," but Plaintiff declined the offer. (*Id.* ¶¶ 92, 94; Pl. Dep. Tr. 60:2–61:15, 63:7–15.) Pratt did not require Plaintiff to relocate as a condition of employment. (Def. 56.1 ¶ 93.)

In the spring of 2022, Mr. Baratta worked with Human Resources to draft a Performance Improvement Plan ("PIP") addressing Plaintiff's attendance, but the plan was never finalized or issued after the HR representative left the company. (Def. 56.1 ¶¶ 99–100.) Pratt did not require a

5

PIP before termination and a PIP did not guarantee continued employment. (*Id.* ¶¶ 101–02.) Mr. Baratta nevertheless continued to counsel Plaintiff regarding attendance, but Plaintiff's unexcused absences continued. (*Id.* ¶¶ 104–105.) On May 2, 2022, Plaintiff failed to report to work without explanation and did not submit the temporary employees' hours for payment, an omission that another employee corrected. (*Id.* ¶ 107, Def. Ex. Q, Ex. H, DEF000620 (p. 17); Fowler Dep. Tr. Vol. II 33:20-34:7.) On May 3, 2022, Plaintiff left work for the day at 7:30 a.m. due to an incident at his son's school. (*Id.* ¶ 109.)

As part of his duties, Plaintiff was expected to participate in Pratt's annual budget meeting, which involves months of preparation and culminates in a presentation to senior leadership. (*Id.* ¶¶ 110–12.) Plaintiff attended the budget meeting on May 9, 2022, during which every member of the Plant's management actively contributed to the call and participated in the presentation except for Plaintiff. (*Id.* ¶¶ 122, 129.). Plaintiff asserts he was told to "just sit there" and that he didn't need to talk because Pratt didn't know if he was going to remain employed by the company. (*Id.* ¶ 120; Pl. 56.1 Opp. ¶ 120.)

On May 12, 2022, Mr. Baratta and Ms. Fowler met with Plaintiff and terminated his employment. (Def. 56.1 ¶ 132.) The Parties dispute whether Plaintiff's FMLA leaves played any role in the termination decision. (*Id.* ¶ 134; Pl. 56.1 Opp. ¶ 134.) On August 3, 2022, Ms. Fowler emailed Mark Kempa, Executive Vice President of Human Resources, stating that "Robin Rivera's performance has been under a microscope for probably a year prior to being terminated." (Pl. 56.1 ¶ 174.)

**PROCEDURAL HISTORY**

Plaintiff commenced this action on September 11, 2023 with the filing of the original Complaint. (ECF No. 1.) On September 13, 2023, Plaintiff filed an Amended Complaint. (ECF

6

No. 5.) On November 27, 2023, Defendant filed an Answer. (ECF No. 12.) Following unsuccessful mediation and discovery, Defendant moved for summary judgment pursuant to Rule 56. (ECF No. 84.) Defendant filed a memorandum of law ("Def. Mem. of L.", ECF No. 85), along with a Declaration with 36 supporting exhibits, including a Rule 56.1 Statement (Pl. 56.1"). Plaintiff filed an Opposition ("Pl. Opp.", ECF No. 86), along with a Declaration with 25 supporting exhibits, including a Counter-Statement of Facts ("Pl. 56.1 Opp.", Pl. Ex. 25). Defendant filed a Reply to Plaintiff's Opposition ("Def. Reply", ECF No. 87), including an Opposition to Plaintiff's Rule 56.1 Statement ("Def. 56.1 Opp.") and a Reply to Plaintiff's Counter-Statement of Facts ("Def. 56.1 Reply").

## LEGAL STANDARDS

### A.  Summary Judgment Under Rule 56

Under Federal Rule of Civil Procedure 56(a), summary judgment must be granted where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law," and a dispute is genuine where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005). The movant bears the initial burden of demonstrating the absence of any genuine issue of material fact, and the Court must "resolve all ambiguities and draw all reasonable inferences in the non-movant's favor." *Vt. Teddy Bear Co., Inc. v. 1–800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004). Once that burden is met, the nonmoving party must do more than raise "some metaphysical doubt as to the material facts" and instead "must come forward with specific facts showing that there is a *genuine issue for trial*." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586

(1986) (internal quotation marks omitted). The nonmoving party may not rely on "mere speculation or conjecture" to defeat summary judgment. *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986); *see also Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998) ("The non-moving party may not rely on conclusory allegations or unsubstantiated speculation.").

Local Civil Rule 56.1 requires the movant to submit a "short and concise statement…of the material facts as to which the moving party contends there is no genuine issue to be tried" and each fact is deemed admitted unless properly controverted by a correspondingly numbered response supported by admissible evidence. Local Civ. R. 56.1(a)–(d). Nonetheless, a reviewing court "may not rely solely on the statement of undisputed facts[,] ... [i]t must be satisfied that the citation to evidence in the record supports the assertion." *Vt. Teddy Bear Co.*, 373 F.3d at 244 (citing *Giannullo v. City. of N.Y.*, 322 F.3d 139, 143 n.5 (2d Cir. 2003)). In deciding a motion for summary judgment, the Court must determine not whether the evidence favors one side over the other, but whether a reasonable jury could return a verdict for the nonmoving party. *Simpson v. City of N.Y.*, 793 F.3d 259, 265 (2d Cir. 2015). Credibility assessments and the resolution of conflicting evidence are matters reserved for the jury and are not appropriate at the summary judgment stage. *Id.*

### B. FMLA Claims

Under the FMLA, an eligible employee is entitled to take up to twelve weeks of unpaid leave during any twelve-month period to care for a spouse with a serious health condition or because of a serious health condition that renders the employee unable to perform the functions of his or her position, among other reasons. 29 U.S.C. § 2612(a)(1)(C)–(D). The FMLA makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter." 29 U.S.C. § 2615(a)(1) "A plaintiff may raise

separate claims under the FMLA for 'interference' with rights and for 'retaliation'" against the exercise of those rights. *McFarlane v. Chao,* No. 04 Civ. 4871, 2007 WL 1017604, at *28–29 (S.D.N.Y. Mar. 30, 2007) (*citing Potenza v. City of New York,* 365 F.3d 165, 167 (2d Cir.2004)).

## DISCUSSION

### A.  Plaintiff's FMLA Interference Claim

#### 1.  Applicable Law

To establish a *prima facie* case on a claim for interference with FMLA rights under 29 U.S.C. § 2615(a)(1), a plaintiff must establish: (1) that he is an eligible employee under the FMLA; (2) that defendant is an employer as defined in the FMLA; (3) that he was entitled to take leave under the FMLA; (4) that he gave notice to the defendant of his intention to take leave; and (5) that he was denied benefits to which he was entitled under the FMLA. *Graziadio v. Culinary Inst. of Am.*, 817 F.3d 415, 424 (2d Cir. 2016).

#### 2.  Plaintiff's Claim of FMLA Interference Fails as a Matter of Law

As an initial matter, it is undisputed that Plaintiff satisfies the first four elements. The Court therefore considers only the fifth element: whether Plaintiff was denied benefits to which he was entitled under the FMLA.

Pratt contends that Plaintiff has not offered any evidence that it denied Plaintiff any of the benefits he was entitled to under the FMLA because "Plaintiff admitted (1) that he provided notice of his intent to take two FMLA leaves; (2) that Pratt approved both leaves Plaintiff requested during his employment; (3) Pratt did not prevent him from exercising his approved leaves; (4) Plaintiff took both approved FMLA leaves in the requested entirety; and (5) Pratt reinstated Plaintiff to the same position with the same rights, privileges and conditions of employment following both leaves." (Def. Mem. of L. at 13.) Plaintiff, in turn, argues that Pratt misconstrues

9

the theory underlying Plaintiff's interference claim and contends that he was "regularly asked to perform certain tasks and assist in work despite management being aware he was out on FMLA leave." (Pl. Opp. at 15.) Plaintiff therefore asserts that a question of fact exists as to whether these demands plausibly impeded his exercise of FMLA rights. (*Id.*)

To support his interference claim, Plaintiff submitted a Declaration asserting that he was "regularly asked to perform work while out on [his] FMLA leaves" and that Pratt employees, Daniel Baratta, Samantha Paccione, and Jason Prego reached out to him "via text message, telephone, or email literally dozes of times each day" with work-related issues or questions. (Pl. Decl. ¶¶ 3-6, Ex. 23.) Nevertheless, the Court agrees with Defendant that these allegations in Plaintiff's Declaration must be discarded. (Def. Reply at 2-4.)

Under the sham affidavit doctrine, "a party may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony." *Crawford v. Franklin Credit Management Corp.*, 758 F.3d 473, 482 (2d Cir. 2014) (quoting *Hayes v. N.Y.C. Dep't of Corr.*, 84 F.3d 614, 619 (2d Cir. 1996)); *see also Perma Research & Dev. Co. v. Singer Co.*, 410 F.2d 572, 578 (2d Cir. 1969) ("If a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact."). "[C]ourts in the Second Circuit are particularly reluctant to credit affidavit testimony that alleges critical, obviously material facts that were not mentioned at deposition, noting that such circumstances strongly suggest a sham affidavit." *Golden v. Merrill Lynch & Co.*, No. 06 Civ. 2970 (RWS), 2007 WL 4299443, at *9 (S.D.N.Y. Dec. 6, 2007). "Relatedly, a party cannot create a triable issue of fact, and thus avoid summary judgment, by renouncing deposition testimony to the effect that he

10

could not remember a particular fact which he now purports to remember." *Fed. Deposit Ins. Corp. v. Murex LLC*, 500 F. Supp. 3d 76, 94 (S.D.N.Y. 2020) (citing *Raskin v. Wyatt Co.*, 125 F.3d 55, 63 (2d Cir. 1997); *see also Kennedy v. City of New York*, 570 F. App'x 83, 84–85 (2d Cir. 2014) (summary order). The sham affidavit doctrine does not apply in only two situations: (1) "where the subsequent sworn statement either does not actually contradict the affiant's prior testimony or 'addresses an issue that was not, or was not thoroughly, explored in the deposition'"; and (2) where the deposition testimony at issue "is contradicted by evidence other than the deponent's subsequent affidavit." *Torrico v. IBM Corp.*, 319 F. Supp. 2d 390, 394 n.2 (S.D.N.Y. 2004) (quoting *Palazzo ex rel. Delmage v. Corio*, 232 F.3d 38, 43–44 (2d Cir. 2000)).

Here, Plaintiff attempts to manufacture a material issue of fact by advancing novel allegations for the first time in his opposition papers through a self-serving affidavit. These new allegations—that Plaintiff's manager and co-workers contacted him regarding work-related matters while he was on FMLA leaves—appear nowhere in the extensive evidentiary record or in Plaintiff's Amended Complaint.[2] (*See generally* Am. Compl.) Plaintiff's Declaration, dated April 7, 2025, was submitted nearly two years after this action commenced, seven months after Plaintiff's deposition concluded, and one month after Pratt filed its motion for summary judgment. If, as Plaintiff now claims, his interference theory was based on allegations that his manager and co-workers required him to work while on FMLA leave, such allegations reasonably would have appeared in the Amended Complaint or, at a minimum, in deposition testimony from Plaintiff or Mr. Baratta. They did not. Instead, Ms. Paccione and Mr. Prego were not deposed at all, and Plaintiff's newly asserted allegations directly contradict his own deposition testimony. When

---

[2] Plaintiff's sole allegation relating to Plaintiff's FMLA interference claim in the Amended Complaint is the following conclusory one: "Plaintiff suffered unlawful treatment at the hands of Defendant due to it interfering with and/or retaliating against Plaintiff for exercising his rights under the FMLA." (Am. Compl. ¶ 30.)

11

asked during his deposition, "How did Pratt interfere with your rights under FMLA?", Plaintiff responded, "I think the reason why I'm not working is because I took FMLA. Had I not taken FMLA, I would have still been working there." (Pl. Dep. Tr. 112:4–9.) When immediately afterwards asked, "Do you have any support for this?", Plaintiff answered, "It's the actions that's happened during the course of my employment there, the attitude that I got." (*Id.* at 112:10–13.) At no point during his lengthy deposition did Plaintiff mention that Mr. Baratta, Ms. Paccione, or Mr. Prego contacted him "dozens of times each day" while he was on FMLA leaves. Nor has Plaintiff produced any emails, text messages, or phone records substantiating these allegations— evidence the Court reasonably expects would exist and have been produced if such conduct had in fact occurred.

Plaintiff's opposition includes several exhibits, seven of which are text message conversations between Plaintiff and Mr. Baratta on different dates. (Pl. Ex. 8–14.) All but one of these exchanges occurred during Plaintiff's First FMLA Leave and are personal in nature, consisting of Mr. Baratta checking in on Plaintiff and Plaintiff providing updates regarding his wife's health. (Pl. Ex. 8–13.) Only one text exchange occurred during Plaintiff's Second FMLA Leave. In that exchange, Mr. Baratta texted Plaintiff, "Just wanted to check with you – is Jesus off the rest of the year starting tomorrow," to which Plaintiff replied, "I think he has two days left." (Pl. Ex. 14.) Such limited communications hardly support Plaintiff's claim that he was required to work or contacted "dozens of times each day" while on FMLA leave. It is well settled that "[f]ielding occasional calls about one's job while on leave is a professional courtesy that does not abrogate or interfere with the exercise of an employee's FMLA rights." *Reilly v. Revlon, Inc.*, 620 F. Supp. 2d 524, 537 (S.D.N.Y. 2009). To establish interference with FMLA rights, Plaintiff must show that Pratt imposed actual work obligations during his leaves. Here, the record contains no

evidence that anyone at Pratt required Plaintiff to perform work while on FMLA leave, beyond perhaps occasionally responding to simple work-related questions via text. Such minimal contact falls far short of work that was "regular, habitual, and meaningfully contributed to [Plaintiff's] ordinary job duties," particularly where it is undisputed that most of Plaintiff's job duties could not be performed remotely and required his physical presence at the Plant during production hours. (Pl. Opp. at 14; Def. 56.1 ¶ 25.)

The cases Plaintiff relies upon are distinguishable from the instant matter. In *Landolfi v. Town of N. Haven*, the plaintiff, a part-time accountant capable of performing her job remotely, was required by her employer to work on year-end fiscal reports and other accounts payable tasks during her leave. No. 3:22-CV-770, 2024 WL 3925332, at *5–6 (D. Conn. Aug. 23, 2024). Importantly, the record in *Landolfi* supported those allegations, and summary judgment on the plaintiff's FMLA interference claim was therefore denied. (*Id.*) In *Supino v. SUNY Downstate Medical Center*, the plaintiff, a professor of medicine, alleged that "[s]he was asked to overturn an [Institutional Review Board] vote over the phone while on intermittent leave despite informing [defendant] beforehand that she did not feel well enough to take on such a task." No. 19CV1315ENVVMS, 2021 WL 4205181, at *12 (E.D.N.Y. Mar. 15, 2021). Similarly, in *Zahler v. Empire Merchants, LLC*, the plaintiff, a sales representative, alleged that "[her supervisor] contacted her and aggressively demanded that she produce an account survey while she was at the hospital caring for her father" and "repeatedly threatened" her with losing the account if she failed to submit the survey, resulting in the plaintiff's own hospitalization. No. 11-CV-3163 JG CLP, 2012 WL 273698, at *8 (E.D.N.Y. Jan. 31, 2012). Both *Supino* and *Zahler* were decided at the motion to dismiss stage, where the pleading standard is significantly lower than the evidentiary burden required to defeat a motion for summary judgment. Moreover, in both cases, the plaintiffs

13

sufficiently alleged a plausible claim of FMLA interference in their initial complaints—unlike Plaintiff here.

Lastly, Plaintiff further attempts to support his new allegations by contending that Mr. Baratta was not adequately advised that Plaintiff was on FMLA leave or of Plaintiff's rights while on protected leave. (Pl. Opp. at 13.) Whether this contention is true is inconsequential, as it does not change the fact that there is no evidence in the voluminous record that anyone at Pratt interfered with Plaintiff's exercise of his FMLA rights by requiring him to perform work while on FMLA leave.

Accordingly, because Plaintiff fails to demonstrate any genuine dispute as to any material fact with respect to his FMLA interference claim, the claim fails as a matter of law, and Pratt is entitled to summary judgment on that claim.

### B. Plaintiff's FMLA Retaliation Claim

#### 1. Applicable Law

To establish a *prima facie* case of FMLA retaliation, a plaintiff employee is required to show that: "(1) he exercised rights protected under the FMLA, (2) he was qualified for his position, (3) he suffered an adverse employment action, and 4) the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent." *Di Giovanna v. Beth Israel Med. Ctr.*, 651 F. Supp. 2d 193, 204 (S.D.N.Y. 2009). If a plaintiff establishes a *prima facie* case, then the burden shifts to the defendant employer to articulate a legitimate, non-retaliatory and non-discriminatory reason for its actions. *Id.* If the employer does so, the presumption of discrimination is rebutted and the burden shifts back to the plaintiff to show that the employer's explanations are pretextual. *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 714 (2d Cir. 1996).

#### 2. Plaintiff's FMLA Retaliation Claim Fails as a Matter of Law

14

As a threshold matter, it is undisputed that Plaintiff satisfies the first three elements of his FMLA retaliation claim. The Court therefore addresses only the fourth element: whether Plaintiff's termination occurred under circumstances giving rise to an inference of retaliatory intent. The Court concludes that the record does not support such an inference. The record contains no evidence that Plaintiff's FMLA leaves factored into Pratt's decision to terminate his employment. Rather, Pratt has articulated a legitimate, non-retaliatory reason for the termination—Plaintiff's chronic attendance issues—which Plaintiff cannot show was pretextual.

Plaintiff himself admitted to significant attendance problems following both his first and second FMLA leaves. Regarding attendance issues post-First FMLA Leave, Plaintiff admitted that:

- Upon his return to work in September 2021 from bereavement leave, he would frequently call out of work through text message or a phone call to care for his son or for other unknown reasons. (Pl. 56.1 Opp. ¶ 47.)

- He frequently arrived late to work or left his shift early. (*Id.* ¶ 48.)

- On many occasions, he provided little to no advance notice of his absences, late arrivals, or early departures, often notifying the Plant only after he was expected to be present. (*Id.* ¶ 49.)

- On September 8, 2021, Plaintiff was absent from work and told Ms. Gardner and Ms. Fowler that the absence was due to his son's first day of school, while telling Mr. Baratta that it was due to his own illness. (*Id.* ¶ 52.)

Regarding attendance issues post-Second FMLA Leave, Plaintiff further admitted that:

- He often notified Pratt of his absences with little to no advance notice, sometimes after his shift had already begun. (*Id.* ¶¶ 68–69.)

15

- Throughout 2022, he arrived an hour late to work once or twice per week and sometimes was two or three hours late. (*Id.* ¶¶ 70–71.)

- He was frequently late or absent for personal reasons, including childcare obligations and adjusting to being a single father. (*Id.* ¶ 72.)

- On February 10, 2022, he texted Mr. Baratta that he would be late because he had to drop his son off at school for a ski trip. (*Id.* ¶ 73.)

- Also in February 2022, he failed to appear for a scheduled interview of a machine operator candidate who would have reported to him, requiring Ms. Fowler to step in at the last minute to conduct the interview with then–Kansas City Plant Manager Steve Longmore. (*Id.* ¶¶ 88–90; Def. Ex. N.)

- Because of his frequent tardiness and absences, employees reporting to Plaintiff were sometimes left without a supervisor until other employees were directed to cover. (*Id.* ¶ 74.)

- Mr. Prego, Pratt's Scheduler, routinely covered Plaintiff's supervisory duties when Plaintiff was late or absent. (*Id.* ¶ 75.)

- By being late and absent from work, Plaintiff was not completing his job duties or performing to the standards required of his position as Plant Manager. (*Id.* ¶ 76.)

Despite these ongoing issues, the record reflects that Pratt made repeated efforts to assist Plaintiff before terminating his employment. Throughout 2022, Mr. Baratta had multiple conversations with Plaintiff emphasizing the importance of consistent attendance, punctuality, and physical presence at the Plant. (Pl. 56.1 Opp. ¶ 81; Pl. Dep. Tr. 56:18–57:8.) In February 2022, Pratt hired Mr. Longmore as a consultant to mentor Plaintiff and improve the Plant's performance. (Pl. 56.1 Opp. ¶ 86.) Mr. McKinney even offered to pay for Plaintiff's relocation closer to the Plant

to reduce his one and a half to two-hour commute, an offer Plaintiff declined. (*Id.* ¶ 94; Pl. Dep. Tr. 60:2–61:15, 63:7–15.) Additionally, in the spring of 2022, Ms. Gardner and Mr. Baratta worked together to draft a Performance Improvement Plan aimed at addressing Plaintiff's attendance issues. (Def. 56.1 ¶ 99; Baratta Dep. Tr. 91:9–14; 92:25–93:3; 97:25–98:20.) Although the plan was never issued because Ms. Gardner left Pratt before it was finalized, this does not diminish Pratt's documented efforts to help Plaintiff improve. (Pl. 56.1 Opp. ¶ 100.)

Plaintiff's reliance on *LeClair v. Berkshire Union Free School District* is misplaced. In *LeClair*, it was undisputed that the employer terminated the plaintiff based on the "total amount of absences," which included FMLA-protected leave. 2010 WL 4366897, at *11 (N.D.N.Y. Oct. 28, 2010). Specifically, when asked whether the sole basis for recommending the plaintiff's termination was based upon the absences that were unrelated to the plaintiff's FMLA leave, the plaintiff's supervisor testified, "It was based on the total amount of absences that she accrued over the two years that she was with us." *Id.* The Court found that the supervisor's response, "with its reference to 'total absences' rather than non-FMLA absences, suggest[ed] that Plaintiff's FMLA-related absences were factored into his decision to terminate Plaintiff." *Id.* Here, Plaintiff mischaracterizes Mr. Baratta's deposition testimony. The following exchange occurred during Mr. Baratta's deposition:

> **Q:** Was Mr. Rivera having a tardiness issue in 2022?
> **A:** Yes.
> **Q:** He also had tardiness issues prior to 2022; correct?
> **A:** Correct.
> **Q:** Was Mr. Rivera having an absenteeism issue in 2022?
> **A:** Yes.
> **Q:** He also had absenteeism issues prior to 2022; correct?
> **A:** Correct.
> **Q:** Mr. Rivera's tardiness and absenteeism issues in the aggregate contributed to his termination of employment from Pratt; correct?
> **A:** Yes. It was a factor.

(Baratta Dep. Tr. Vol. II 88:11–89:3.)

17

Plaintiff argues that because Mr. Baratta did not expressly differentiate between FMLA-protected absences and non-protected absenteeism in this exchange, a triable issue of fact exists as to whether Plaintiff's FMLA leaves contributed to his termination. (Pl. Opp. at 18.) The Court disagrees. This interpretation ignores the context of the deposition testimony and is unsupported by the record. Mr. Baratta's testimony plainly refers to the totality of Plaintiff's chronic tardiness and absenteeism during periods when Plaintiff was expected to be actively working—both during and prior to 2022—not to absences taken during Plaintiff's FMLA leaves. Notably, Plaintiff returned to work from his Second FMLA Leave on January 3, 2022, and thus was essentially not on FMLA leave during 2022, the period in which the attendance issues primarily arose. Moreover, both Mr. Baratta and Ms. Fowler expressly testified that Plaintiff's FMLA leaves were not considered in the decision to terminate his employment. When asked whether Plaintiff's attendance issues existed in November and December 2021 and into January 2022, Mr. Baratta responded: "No. He had surgery those times. That's you're sick or you're unavailable. That's a different story. This is when you're active and engaged to be at work and you're not showing up to work. It's a different problem." (Baratta Dep. Tr. Vol. II 107:11–20.) Similarly, when asked about Plaintiff's attendance issues in 2021, Ms. Fowler testified: "Nothing under our protected leave is counted as attendance…But it was primarily in 2022 where we were dealing with attendance issues," and "We don't look at FMLA issues or anything like that going towards attendance…they're entitled to that time." (Fowler Dep. Tr. Vol. II 40:24–42:3.) Simply put, it defies credulity that Pratt would have granted Plaintiff two FMLA leave requests, provided him with an extended three-week bereavement leave, and repeatedly attempted to assist him with his attendance issues, only to then terminate him for FMLA-protected absences. Even crediting Plaintiff's perception that Mr. Baratta gave him "attitude" following his return from FMLA leave, which Plaintiff contends demonstrates

18

animus, the record demonstrates that Mr. Baratta's comments were directed at Plaintiff's chronic tardiness and absenteeism—not his use of FMLA leave. For example, Plaintiff relies on deposition testimony in which Mr. Baratta stated that, during the spring and summer of 2021, he may have told Plaintiff that he needed to be present at the Plant, including during the period when Plaintiff's wife was ill. (Pl. Opp. at 19; Baratta Dep. Tr. 65:6–13.) Mr. Baratta also testified that he addressed Plaintiff's attendance issues during that time. (Baratta Dep. Tr. 40:4–17.) However, it is undisputed that Plaintiff's approved FMLA leave during the spring and summer of 2021 was *intermittent*, meaning that Plaintiff was not on leave continuously all of spring and summer 2021. During the remainder of that period that Plaintiff was not on leave, he was expected to report to work on time during his regularly scheduled hours; yet as discussed above, the record reflects, and Plaintiff himself admitted, that Plaintiff was frequently late or absent from work without adequate notice.

Lastly, the record demonstrates that Pratt's proffered reason for terminating Plaintiff was not pretextual. Plaintiff's chronic attendance issues are well documented, including through his own admissions. Plaintiff's attempt to manufacture a triable issue of fact based on the unchecked "absenteeism" and "tardiness" boxes on his Employee Separation Form is a red herring. (Pl. Opp. at 21–22.) In her deposition, Ms. Fowler explained that she "checked unsatisfactory performance because performance entails absenteeism" and those are "lumped together." (Fowler Dep. Tr. 61:10–14.) She further testified that "part of performance is coming to work" and that the "absenteeism" and "tardiness" boxes apply only to hourly employees because hourly employees are subject to a points-based attendance program. (*Id.* at 61:6–20, 62:10.) Plaintiff also relies on an email from Ms. Fowler stating that Plaintiff's performance had been "under a microscope" for approximately a year prior to his termination, but this is a similar red herring. (Pl. Opp. at 18–19.) Plaintiff was terminated in May 2022, and the record—including Plaintiff's own testimony—

19

reflects that his non-FMLA-related attendance issues began in the spring and summer of 2021 and worsened throughout 2022. Accordingly, the period during which Plaintiff's supervisors monitored his performance, which includes attendance, corresponds to the duration of Plaintiff's documented attendance issues, and does not support an inference of pretext.

The Parties also dispute the role Plaintiff's performance at the annual Budget Meeting played in his termination. The Court finds this disagreement immaterial. Pratt does not contend that Plaintiff was terminated *because* of his performance at the Budget Meeting; rather, Pratt maintains that the meeting served as the "final straw" in a pattern of ongoing performance deficiencies, namely Plaintiff's persistent absenteeism and tardiness. (Baratta Dep. Tr. 34:4–19; Fowler Dep. Tr. Vol. II 40:9–41:18.) In any event, because Plaintiff's attendance issues are well-documented, whatever role Plaintiff's performance at the Budget Meeting may have played in Pratt's decision to terminate Plaintiff is inconsequential.

Accordingly, because Pratt has articulated a legitimate, non-retaliatory reason for terminating Plaintiff—his chronic absenteeism and tardiness—and Plaintiff cannot show such reason is pretextual, Plaintiff's FMLA retaliation claim fails and Pratt is therefore entitled to summary judgment on that claim.

## CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is GRANTED in its entirety. The Court respectfully directs the Clerk of Court to enter judgment in favor of Defendant and to terminate the motion at ECF No. 84 and this action.

SO ORDERED.

Dated: February 6, 2026
White Plains, New York

_____
Hon. Nelson S. Roman
U.S. District Court Judge, S.D.N.Y.

20